UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | **REPORT,** |
| | **RECOMMENDATION** |
| v. | **AND ORDER** |
| MILTON WILLIAMS, Jr., | 18-CR-00085-EAW-JJM |
| Defendant. | |

_____

Defendant Milton Williams, Jr. is charged in a nine-count Indictment with a variety of controlled substances and firearm offenses. Indictment [12].[1] These charges arise, in part, from evidence obtained from a search of his residence that was conducted pursuant to a December 6, 2017 search warrant signed by Acting New York State Supreme Court Justice Richard C. Kloch, Sr. [29].

Before the court are defendant's remaining motions to suppress evidence from that search and for disclosure of informant identities,[2] as well as the government's cross-motion for reciprocal discovery (government's Response [22], pp. 15-16), all of which have been referred to me by District Judge Elizabeth A. Wolford for initial consideration [14]. Having considered the parties' submissions [21, 22, 25, 30], and heard oral argument on July 16, 2018 [31], defendant's motion for disclosure of informant identities is denied, the government's cross-motion is granted, and I recommend that defendant's motion to suppress be denied.

---

[1] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2] Defendant agreed that all other portions of his motion have been resolved. *See* July 16, 2018 Text Order [27].

## BACKGROUND

Justice Kloch's December 6, 2017 search warrant authorized the search of defendant's residence at 1364 Pierce Avenue, Upper Apartment, Niagara Falls, New York, his person, and a black 2006 Range Rover bearing New York State registration HPS1619 [29].[3] The search warrant stated that it was supported by "PROOF BY AFFIDAVIT . . . BY INVESTIGATOR KEVIN SMITH" with the Niagara County Sheriff's Office. Id., p. 1 of 6 (CM/ECF). Although it contained no reference to *in camera* testimony or to any other materials being submitted in support of the search warrant, *in camera* testimony was in fact taken in connection with the search warrant, a transcript of which has been provided to me by the government [32].

Investigator Smith stated that he had been investigating defendant's illegal narcotics activities for the past three months, as well as the premises located at 1364 Pierce Avenue, Upper Apartment, and from that investigation "determined that [defendant] does sell, store, and distribute quantities of cocaine at the premises" and from the Range Rover. [29], p. 2 of 6 (CM/ECF). The basis for Investigator Smith's belief was that on a monthly basis from October to December 2017, a confidential informant conducted three controlled purchases of cocaine from defendant. Id., pp. 3-4 of 6 (CM/ECF), ¶¶D-F. Two of these transactions took place in the Range Rover that was operated by defendant. Id., p. 3 of 6 (CM/ECF), ¶¶D, E. During the November 2017 transaction, defendant was surveilled exiting the residence, entering the Range Rover, and proceeding "directly" to a location where he sold cocaine to the confidential informant. Id., ¶E.

---

[3]   Defendant has been provided with a redacted version [29] of the search warrant application [28].

Investigator Smith further stated that a records check revealed that defendant is the owner of 1364 Pierce Avenue, and that the Range Rover he was observed operating was registered to Michelle Montgomery, who received a furniture delivery in October 2017 to that address. Id., ¶¶B,C.

After defendant filed his motion to suppress, the government argued that the motion was deficient because it was not accompanied by an affidavit of standing. In response, defendant submitted an Affidavit [25], stating that the search occurred at his residence. Id., ¶2. At oral argument, the government did not dispute the timeliness of that Affidavit, but rather its sufficiency. Therefore, I directed defendant to supplement that Affidavit by confirming that he resided at 1364 Pierce Avenue, Upper Apartment, and that he had a reasonable expectation of privacy in that premises.  July 16, 2018 Text Order [27].  Defendant has since provided a second Affidavit [30], providing that additional information,confirming his standing to seek suppression of the search of 1364 Pierce Avenue.

## ANALYSIS

**A.    Defendant's Motion to Suppress Physical Evidence from the Search of his Residence**

In "determining whether probable cause exists to justify a search, the Court must look for a reasonable nexus between the criminal activities described in the warrant application and the place to be searched." United States v. Nix, 2016 WL 11268960, *4 (W.D.N.Y. 2016), adopted,  2017 WL 65329 (W.D.N.Y. 2017) (Wolford, J.).  "A showing of nexus does not require direct evidence and "may be based on 'reasonable inference' from the facts presented based on common sense and experience." United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004).

In seeking suppression, defendant relies upon the absence of a nexus between his alleged drug trafficking activities and his residence: "[t]he mere fact that [defendant] went from him home to a drug sale is too vague and generalized a nexus to support the search warrant of the home." Defendant's Motion [21], p. 28 of 32 (CM/ECF), ¶20.[4] Defendant characterizes these facts as being "almost identical" to those presented in United States v. Brown, 828 F.3d 375 (6th Cir. 2016). Defendant's Motion [21], p. 28 of 32, ¶22.

In Brown, law enforcement obtained a warrant to search the defendant's residence for evidence of a conspiracy to distribute heroin, that was based on the following facts: (1) a dog alerted to the odor of narcotics in a vehicle that was parked at a codefendant's house and registered to the defendant at his residence; (2) a text message was discovered on a cellular telephone believed to belong to the defendant that law enforcement opined was consistent with the "pricing for one ounce of cocaine"; and (3) the defendant had a 12-year-old conviction for a conspiracy to distribute marijuana and had been acquitted of other previous drug charges. 828 F.3d at 379-80. The court found that these facts failed to establish probable cause to search the defendant's residence, explaining that "[s]ave for a passing reference to [the defendant's] car registration, the affidavit is devoid of facts connecting the residence to the alleged drug dealing activity." Id. at 385. It lacked "evidence that [the defendant] distributed narcotics from his home," "that any suspicious activity had taken place there," "that a reliable confidential informant had purchased drugs there," or "that the police had ever conducted surveillance at [the] home." Id. at 382. In the absence of these facts, the court found that the "defendant's status as a drug dealer, standing alone, d[id] not give rise to a fair probability that drugs will be found

---

[4] Defendant does not seek suppression of any evidence seized from his person or the Range Rover.

in defendant's home". Id. at 383.[5] Because the affidavit failed to "draw some plausible connection to the residence", the good-faith exception did not prevent the suppression of the evidence. Id. at 385-86.

In response, the government makes no effort to specifically address, much less mention, defendant's heavy reliance on Brown. Instead, it generally notes that the Sixth Circuit cases upon which defendant relies are "significantly distinguishable and non-binding". Government's Response [22], pp. 20-21. Alternatively, it relies on the good-faith exception of United States v. Leon, 468 U.S. 897 (1984), to argue that suppression is not warranted. Id., pp. 21-22.

Before addressing the parties' arguments, I must initially determine what materials may be considered in connection with the court's probable cause review. Though the government has presented a transcript indicating that *in camera* testimony was taken in connection with this warrant, the face of the warrant includes no reference to anything being submitted or considered in support of the search warrant, other than the Affidavit of Investigator Smith. [29], p. 1 of 6 (CM/ECF). Therefore, I will limit my review to that Affidavit. *See* United States v. Rosa, 626 F.3d 56, 64 (2d Cir. 2010) (the court may not "rely on unincorporated, unattached supporting documents to cure an otherwise defective search warrant").

Investigator Smith's Affidavit submitted in support of the search warrant demonstrates that the only nexus connecting defendant's drug trafficking activities to his residence is the fact that he was surveilled on one occasion leaving the residence in the Range

---

[5] The Sixth Circuit was careful to differentiate the circumstances in Brown from those cases where it had found a sufficient nexus even though facts were not included demonstrating that the residence had been used for drug trafficking. Brown, 828 F.3d at 383 n.2. It highlighted that those cases "contained overwhelming evidence that the defendants were major players in a large, ongoing drug trafficking operation", circumstances not present in Brown. Id.

Rover immediately before conducting a sale of cocaine to the confidential informant in that vehicle.  Unlike Brown, those facts create at least some (albeit minimal) nexus between defendant's drug trafficking activities and his residence.  However, in the absence of additional facts or other arguments from the government, I conclude that the Affidavit falls short of establishing a sufficient probable cause for a search of the residence.

However, suppression is to be the "last resort, not [the court's] first impulse". Herring v. United States, 555 U.S. 135, 140 (2009). Thus, Leon recognizes "an exception to the exclusionary rule for 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" United States v. Clark, 638 F.3d 89, 99 (2d Cir. 2011). "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance' on an invalidated warrant . . . . In assessing whether it has carried that burden, we are mindful that . . . that most searches conducted pursuant to a warrant would likely fall within its protection." Id. at 100. "[A]gainst this presumption of reasonableness", four circumstances have been identified where the good faith presumption of reasonableness will not apply to preserve evidence from suppression: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." Id.

Nothing in the record before me indicates that Justice Kloch was misled or abandoned his judicial role. See Clark, 638 F.3d at 101 ("abandonment of judicial neutrality and detachment properly cannot be inferred from the fact that the magistrate committed legal error in his assessment of probable cause").  Nor is there any argument that the warrant was facially deficient by failing to particularize the place to be searched or the things to be seized.

Therefore, this inquiry turns on the third circumstance - *i.e.*, was the warrant so lacking in probable cause for the search of the residence so as to render reliance upon it unreasonable. This circumstance "frequently arises when affidavits are bare bones, *i.e.*, totally devoid of factual circumstances to support conclusory allegations". Clark, 638 F.3d at 103.

Here, unlike in Brown, I do not find that the affidavit was entirely "devoid" of facts connecting defendant's drug distribution to his residence, so as to render reliance upon it unreasonable. 828 F.3d at 385. In concluding that the good-faith exception did not apply, the court in Brown specifically noted that law enforcement never "surveilled [the defendant's] home or otherwise attempted any investigation regarding whether the residence was linked to the alleged drug conspiracy". Id. The same cannot be said here. Law enforcement made at least some attempt to connect defendant's alleged drug trafficking activities to the residence by surveilling him leaving that location before selling cocaine to the confidential informant. These facts, while minimal, demonstrate that the application was not devoid of any facts supportive of probable cause. *See* United States v. Rios, 881 F. Supp. 772, 776-78 (D. Conn. 1995) (applying the Leon good-faith exception to a search warrant that lacked probable cause for the search of a residence).

Indeed, search warrants have been upheld with little more. *See, e.g.,* United States v. Donald, 417 Fed. App'x 41, 43 (2d Cir. 2011) (Summary Order) (where defendant's wife, who was identified as being involved in the narcotics scheme, was observed travelling from the defendant's "residence to consummate a narcotics transaction . . . . [t]ogether with the scale of [the defendant's] distribution activities . . . there was a substantial basis for the issuing judge to find by a fair probability that evidence of this criminal conduct could be located at [the

defendant's] residence"); United States v. Travisano, 724 F.2d 341, 346 (2d Cir. 1983) (finding probable cause to search a residence connected to a vehicle used in a bank robbery); United States v. Cruz, 785 F.2d 399, 404-05 (2d Cir.1986) (probable cause to search an apartment of suspected drug dealer existed where "no agent saw [him] or any of his associates use the apartment', but law enforcement opined that "narcotics dealers 'customarily' maintain apartments and other locations apart from their residences in furtherance of their business"); United States v. Alexander, 1993 WL 97407, *4 (S.D.N.Y. 1993) (finding probable cause to search a residence where, *inter alia*, the defendant was observed bringing a brown paper bag of either heroin or the proceeds of a heroin transaction to that residence on at least one occasion).

As some courts have also recognized, "[c]ritical" to the court's decision in Brown, was the fact that after the defendant's arrest, law enforcement waited more than three weeks to search his residence, despite obtaining a search warrant for a co-defendant's residence at the time of their arrest. United States v. Ardd, 2017 WL 1382548, *10 (W.D. Tenn. 2017). *See* Brown, 828 F.3d at 385 ("if the police officers did not think the evidence establish probable cause to search [the defendant's] residence on March 9, when they sought and obtained the warrant to search [the co-defendant's], the record provides no reason to think their assessment had changed by March 30"). However, that circumstance does not apply here.

Therefore, I conclude that law enforcement's reliance on the search warrant was objectively reasonable, and recommend that the evidence seized not be suppressed.

**B.     Defendant's Motion for Disclosure of Informant Identities**

Defendant seeks disclosure of informant information by arguing that "[m]uch of what the government's evidence in this case appears to be is based on the information provided

by informants or cooperators", and that he is entitled to know whether any of the informants "have any knowledge of whether [he] was or was not involved in alleged criminal activity". Defendant's Motion [21], p. 4 of 32 (CM/ECF).  The government responds that defendant fails to satisfy his burden of showing a particularized need for the disclosure of this information, and that given the drug-related nature of the case, the government's interest in protecting the confidential informant's safety outweighs defendant's generalized claims of need.  Government's Response [22], p. 3.

   The government is not required to provide early disclosure of the identities of informants unless "an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause". Roviaro v. United States, 353 U.S. 53, 60–61 (1957).  "The defendant bears the burden of showing the need for disclosure of an informant's identity . . . and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial." United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997).

   "The defendant is generally able to establish a right to disclosure where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.1988).  Disclosure is not required if a defendant fails to show that "the testimony of the informant would . . . [be] of even marginal value to the defendant's case". Id.  "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." Fields, 113 F.3d at 324.

Defendant's generalized and speculative showing falls short of meeting this standard, especially when balanced against the government's concerns for the informant's safety. Without more, the need for disclosure of informant identities has not been established at this time. See United States v. Boone, 2003 WL 841088, *6 (S.D.N.Y. 2003) ("[m]ere speculation . . . that the informer may possibly be of some assistance does not overcome the strong public interest in protecting informants"). Cf. DiBlasio v. Keane, 932 F.2d 1038, 1043 (2d Cir. 1991) (disclosure required where the defendant introduced evidence that, if credited, would establish an entrapment defense and where the informant was only witness who could corroborate that defense). Therefore, this motion is denied, without prejudice.

C.      **Government's Cross-Motion for Reciprocal Discovery**

The government moves for reciprocal discovery pursuant to Rule 16(b). Government's Response [22], pp. 15-16. "Rule 16 . . . imposes reciprocal discovery obligations on defendants." United States v. Smith, 985 F.Supp.2d 506, 522 (S.D.N.Y. 2013). Defendant has not opposed this request. Therefore, the government's motion is granted. "Defendant shall provide such discovery, if any, not later than 30 days prior to trial or such other date as the District Judge may direct." United States v. Sikut, 488 F.Supp.2d 291, 304 (W.D.N.Y. 2007) (emphasis omitted).

**CONCLUSION**

For these reasons, the government's cross-motion for discovery (government's Response [22], pp. 15-16) is granted, defendant's motion for informant identities (defendant's Motion [21], p. 4 of 32 (CM/ECF)) is denied, without prejudice, and I further recommend that

defendant's motion to suppress (id., pp. 25-30 of 32 (CM/ECF)) be denied. Unless otherwise ordered by Judge Wolford, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by September 4, 2018. Any requests for extension of this deadline must be made to Judge Wolford. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: August 21, 2018

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge