UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

MILTON WILLIAMS, JR.,

Defendant.

**DECISION AND ORDER**

1:18-CR-00085 EAW

## INTRODUCTION

Defendant Milton Williams, Jr. ("Defendant") stands accused by way of a nine-count Indictment returned on April 4, 2018, with four counts of distribution of a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts 1 through 4); possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 5); possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (Count 6); maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) (Count 7); possession of firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 8); and possession of defaced firearms, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B) (Count 9). (Dkt. 12).

Presently before the Court are the Government's and Defendant's objections (Dkt. 34; Dkt. 36) to the August 21, 2018 Report and Recommendation issued by United States Magistrate Judge Jeremiah J. McCarthy (Dkt. 33) which concluded that the search warrant for Defendant's residence lacked probable cause, but nonetheless denied Defendant's

motion to suppress (Dkt. 21) based upon the good faith standard set forth in *United States v. Leon*, 468 U.S. 897 (1984). This Court has conducted, as it must, a *de novo* review of the suppression motion. Because the officers executing the search of Defendant's residence reasonably relied on the search warrant in good faith, this Court denies Defendant's motion to suppress and does not reach the issue of whether the warrant was supported by probable cause. *See United States v. Ganias*, 824 F.3d 199, 209 (2d Cir. 2016) ("Because we conclude that the agents acted in good faith, we need not decide whether a Fourth Amendment violation occurred.").

## PROCEDURAL BACKGROUND

Defendant was initially charged by way of criminal complaint on January 19, 2018, with possession with intent to distribute cocaine and marijuana; possession of a firearm in furtherance of a drug trafficking crime; and possession of defaced firearms, all stemming from a search by law enforcement that occurred on December 12, 2017. (Dkt. 1). A grand jury returned an Indictment on April 4, 2018, charging Defendant with nine counts of firearms and drug trafficking crimes. (Dkt. 12). The undersigned referred the case to Judge McCarthy for all pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Dkt. 14). On June 4, 2018, Defendant filed pretrial motions, including a motion to suppress evidence recovered from the search of his residence on December 12, 2017. (Dkt. 21). Judge McCarthy held oral argument on the motions on July 16, 2018 (Dkt. 26) and directed the parties to provide additional materials relevant to Defendant's motion to suppress, including the opportunity to review audio recordings of a confidential informant and an affidavit from Defendant relating to his expectation of privacy in the search location (1364

Pierce Avenue, upper apartment). (Dkt. 27). Judge McCarthy further directed the Government to provide an unredacted transcript of *in camera* testimony supporting the search warrant, and to provide Defendant with a redacted version, or an explanation as to why it believed it was unable to provide this information. (*Id.*).

On August 21, 2018, Judge McCarthy issued a Report and Recommendation concluding, among other things, that Defendant's motion to suppress should be denied. (Dkt. 33). Judge McCarthy found that while the search warrant lacked probable cause for the search of Defendant's residence at 1364 Pierce Avenue (*id.* at 4-6), the search was valid pursuant to the *Leon* good faith exception, in that the affidavit was not "so lacking in probable cause for the search of the residence so as to render reliance upon it unreasonable" (*id.* at 6-8).

Both the Government and Defendant have filed objections and responses to Judge McCarthy's Report and Recommendation. (Dkt. 34; Dkt. 36; Dkt. 40; Dkt. 41). The Government objects to Judge McCarthy's finding that the search warrant lacked probable cause. (Dkt. 34). In the alternative, the Government contends that should the Court agree with Judge McCarthy's conclusion that the search warrant lacked probable cause, the Court should adopt Judge McCarthy's recommendation that the *Leon* good faith exception applies. (Dkt. 41). Defendant objects to Judge McCarthy's finding that the *Leon* good faith exception applies and argues that the evidence must be suppressed. (Dkt. 36; Dkt. 40).

## BACKGROUND

Defendant's motion to suppress stems from a search warrant executed at his residence, located at 1364 Pierce Avenue, upper apartment, in Niagara Falls, New York. (Dkt. 29). The search warrant authorized the search of three locations for evidence of drug trafficking: (1) Defendant's person; (2) Defendant's residence at 1364 Pierce Avenue; and (3) a 2006 black Land Rover Range Rover, which law enforcement had observed Defendant operating and which was involved in at least two controlled purchases of narcotics. (*Id.* at 1-3). Acting New York State Supreme Court Justice Richard C. Kloch, Sr. signed the search warrant on December 6, 2017. (*Id.* at 4). In addition to the information contained in the search warrant affidavit, Justice Kloch also received *in camera* testimony relevant to the search warrant application. (Dkt. 33 at 5). This *in camera* testimony is not referenced by or incorporated into the search warrant or its application. (*Id.*; *see also* Dkt. 29). As a result, in his Report and Recommendation, Judge McCarthy determined that the *in camera* testimony could not be considered in connection with any probable cause review (Dkt. 33 at 5), and the Government does not object to Judge McCarthy's ruling on that issue. (Dkt. 34 at 2 n.1). *See United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010) (holding the court may not "rely on unincorporated, unattached supporting documents to cure an otherwise defective search warrant").

The basic facts contained in the search warrant application are as follows. Utilizing a confidential informant, law enforcement engaged in three controlled purchases of narcotics over the months of October, November, and December 2017. (Dkt. 29 at 3-4). During the first controlled purchase in October 2017, law enforcement observed the

confidential informant at the purchase location, where he/she entered a black Range Rover operated by Defendant. (*Id.* at 3). After a short time, the confidential informant exited the vehicle. (*Id.*). Following the controlled purchase, the confidential informant turned over to law enforcement a knotted plastic bag containing a quantity of white powder that the confidential informant stated he/she had purchased from Defendant. (*Id.*). A portion of the white powder substance field-tested positive for the presence of cocaine. (*Id.*).

During the second controlled purchase in November 2017, law enforcement observed "a black male" exit the residence at 1364 Pierce Avenue, enter a black Range Rover, and proceed directly to the location of the controlled purchase. (*Id.*). At the purchase location, the confidential informant entered the black Range Rover and a short time later, exited the vehicle. (*Id.*). Following the controlled purchase, the confidential informant turned over to law enforcement a knotted plastic bag containing a quantity of white powder that the confidential informant stated he/she had purchased from Defendant. (*Id.*). A portion of the white powder substance field-tested positive for the presence of cocaine. (*Id.*).

During the third controlled purchase in December 2017, law enforcement observed the confidential informant at the purchase location, where he/she entered the passenger side of a silver Jeep. (*Id.*). After a short time, the confidential informant exited the vehicle. (*Id.*). Following the controlled purchase, the confidential informant turned over to law enforcement a knotted plastic bag containing a quantity of white powder that the confidential informant stated he/she had purchased from Defendant. (*Id.* at 4). A portion of the white powder substance field-tested positive for the presence of cocaine. (*Id.*). The

search warrant concludes by requesting authorization to search Defendant, his vehicle, and his residence at 1364 Pierce Avenue for cocaine, as well as items which tend to show the possession, storage and sale of cocaine, including money, cellphones, written articles, papers, and ledgers. (*Id.*).

A December 12, 2017 search of 1364 Pierce Avenue resulted in the seizure of evidence of drug trafficking and firearms crimes. (Dkt. 21 at 25 ¶ 7; Dkt. 34 at 3). Defendant argues that this evidence should be suppressed.

## DISCUSSION

### I.  Probable Cause for the Search Warrant

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To establish probable cause to search a residence, two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). Here, the dispute centers not on whether a crime was committed, but rather whether there was probable cause to believe that evidence of the crime would be located at Defendant's residence.

"[P]robable cause to search a place exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place' and a federal court must apply a 'totality-of-the-circumstances analysis' in pursuing this inquiry." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When reviewing the validity of a search warrant:

the duty of [the] court . . . is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed. A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant.

*United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (quotations and citations omitted); *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("[A] reviewing court must accord considerable deference to the probable cause determination of the issuing magistrate. . . ."). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit [applying for a warrant] should not take the form of *de novo* review." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 236) (alteration in original). "[R]esolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *see United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) ("Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant, and its related concern that '[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." (alteration in original) (citations omitted)).

The Government contends that Judge McCarthy erred by "constrain[ing] his consideration of the facts to the surveillance conducted prior to the November 2017 controlled buy and disregard[ing] the natural and reasonable inferences that could be drawn

from several additional facts presented to Judge Kloch." (Dkt. 34 at 5). Specifically, the Government cites to the following facts:

> (1) the defendant was the listed owner of the premise[s] in public records; (2) surveillance of the defendant traveling directly from the premise[s] to a controlled buy; (3) the vehicle used by the defendant to conduct two of the controlled buys was seen parked at the premise[s] during both day and evening hours; and (4) the registered owner of the target vehicle had furniture delivered to the premise[s].

(*Id.* at 7). The Government contends that while the "most significant fact bearing on the nexus requirement is the November 2017 controlled buy when [Defendant] was surveilled leaving the premise[s], entering the target Range Rover vehicle, and traveling directly to the location where the transaction took place," the Report and Recommendation ignored the natural and reasonable inferences that could be drawn from the additional facts presented to Justice Kloch, including the close association of the Range Rover involved in the controlled buys that was owned by a woman apparently residing with Defendant at the Pierce Avenue residence. (*Id.* at 8).

Based on its *de novo* review, this Court concludes that whether probable cause existed for issuance of the search warrant is a close call. A number of the facts relied on by the Government are plainly relevant to the showing that Defendant lived at 1364 Pierce Avenue—but they do not necessarily establish probable cause to believe that evidence of drug trafficking would be found there. A defendant's status as a drug dealer alone does not give rise to a fair probability that evidence of drug trafficking will be found in his home. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the property owner is suspected of [a] crime but that there is

reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."); *United States v. Lahey*, 967 F. Supp. 2d 698, 712 n.16 (S.D.N.Y. 2013) ("But the question of whether there was probable cause to believe that [the defendant] was a drug dealer is potentially distinct from the question of whether there was probable cause to search his apartment."); *United States v. Kortright*, No. 10 CR 937 (KMW), 2011 WL 4406352, at *7 (S.D.N.Y. Sept. 13, 2011) ("[S]tale information . . . that [a defendant] dealt drugs on a handful of occasions, combined with . . . an expert opinion that drug dealers typically keep drugs in their homes, is not enough to establish probable cause to search. . . .").

The Government submits that it is reasonable to conclude that Defendant kept evidence of his drug trafficking in his residence when the tool utilized for the drug sales (the Range Rover) was regularly kept day and night outside the residence, and on at least one occasion Defendant was observed leaving the residence and driving the Range Rover directly to a controlled buy. (Dkt. 34 at 8-9). The Government cites *United States v. Donald*, 417 F. App'x 41 (2d Cir. 2011), where the Second Circuit Court of Appeals found that there was probable cause supporting the search of the defendant's residence, because the warrant application described the involvement of the defendant's wife in the narcotics scheme, and investigators observed the wife traveling from the defendant's residence to engage in a narcotics transaction with a confidential informant. *Id.* at 43. The Court explained when considering this information:

> [t]ogether with the scale of [the defendant's] distribution activities, *see United States v. Fama*, 758 F.2d 834, 837-38 (2d Cir. 1985) (suggesting that size of narcotics trafficking scheme may be factor relevant to probability that

contraband will be located at trafficker's residence), there was a substantial basis for the issuing judge to find by a fair probability that evidence of this criminal conduct could be located at [the defendant's] residence.

*Id.* While the facts described in *Donald* are similar to the instant case, they are not identical. The Second Circuit's ruling in *Donald* that the search warrant was supported by probable cause was at least in part dependent upon the defendant's involvement in large-scale drug trafficking activities. The Court cited to *United States v. Fama*, 758 F.2d 834 (2d Cir. 1985), a case which suggests that the size of a narcotics trafficking scheme is a factor relevant to the probability that contraband will be located at a drug trafficker's residence. *See id.* at 837-38 ("The huge scale of the business operating from the Fama home in April, indicated best perhaps by the $3.4 million in cash on hand, is perfectly consistent with the belief that the Famas, appellee included, were incorrigible criminals."). In other words, where there is a lack of evidence directly connecting a residence to drug trafficking activity, information that the drug trafficking perpetrated by the defendant is large-scale in nature can support a probable cause finding to search the defendant's residence.

Moreover, the Court is cognizant that "[p]robable cause determinations are frequently upheld in situations where a law enforcement officer provides an expert opinion that drug traffickers often maintain evidence of their crimes at their residences." *United States v. Fernandes*, 50 F. Supp. 3d 398, 405 (W.D.N.Y. 2014). An investigator's opinion that based on training and experience, drug traffickers maintain evidence of their illegal activities at their residences, may assist in establishing probable cause to search. Generally, an investigator's opinion in this regard is based on background evidence of

significant, on-going drug trafficking activity. *See United States v. Jackson*, 493 F. Supp. 2d 592, 609-10 (W.D.N.Y. 2006) (citing the Second Circuit's holding in *Fama* and upholding search warrant in multi-agency, large-scale cocaine investigation where DEA agent admitted that he had "no specific information" connecting drugs to premises to be searched, but opined, based on his training and experience, that "dealers involved in narcotics trafficking, such as those who deal in quantities of cocaine and cocaine base, frequently maintain at their residences or other residences, cocaine and currency to finance their business, as well as records and other papers relative to the transportation, ordering, sale and distribution of controlled substances"); *see also United States v. Mullen*, 451 F. Supp. 2d 509, 543 (W.D.N.Y. 2006) ("[The] judicial officer thus properly inferred, relying on [the affiant's] experience as stated in the affidavit, that based on [the defendant's] status as a leader of the large-scale and on-going narcotics conspiracy, as charged by the Indictment, [the defendant's] residence would yield evidence of narcotics trafficking.").

Here, however, there is no indication that Defendant was part of a large-scale drug trafficking organization. The search warrant application does not contain a description of a lengthy investigation involving several agencies. Similarly, there is no contention that Defendant was the leader of a significant drug trafficking organization. Nor is there any statement by the affiant that, based on the size of the drug trafficking operation and his training and experience, evidence of drug trafficking would be found at 1364 Pierce Avenue. Rather, the search warrant affidavit describes an investigation involving three controlled purchases of narcotics over a three-month period of time. (*See* Dkt. 29 at 3-

4). The search warrant affidavit also states that the confidential informant, on each occasion, received a "knotted plastic bag containing a quantity of white powder substance" from Defendant—suggesting that the amounts purchased by the informant were not substantial. (*Id.*).

The Government also relies on *Travisano*, 724 F.2d 341, arguing that the Range Rover, which was used by Defendant to perpetrate alleged drug crimes, was parked next to 1364 Pierce Avenue and therefore adds to the probable cause analysis for searching the property. (Dkt 34 at 9). In *Travisano*, law enforcement applied for a search warrant and searched a residence for evidence of a shooting and robbery that had occurred the day before. 724 F.2d at 343. The perpetrators of the robbery fled from the scene with a AAA Motor Club flight bag, containing over $35,000 in cash and $45,000 in checks. *Id.* The day after the robbery and shooting, a vehicle matching the description of the getaway vehicle, which had a vanity plate, was identified outside of the defendant's house. *Id.* Law enforcement established surveillance and noticed that the vanity plate had been removed. *Id.* Law enforcement also learned that the vehicle was registered to a Marie Travisano, and that her son, the defendant, frequently used the vehicle. *Id.* One of the eyewitnesses to the shooting was shown the vehicle while it was parked at the defendant's residence and identified it as the vehicle he had seen speeding away from the scene of the crime just the day before. *Id.* In holding that the search of the residence was supported by probable cause, the Court explained that the facts in the case were "critical," and found that based on these facts, "[c]onsidering the value of the items which were stolen and the short time involved, the magistrate could reasonably infer that the robbers had time to

remove and secrete the items and desired to secure these items in a safe area such as a residence." *Id.* at 343, 346. The Court concluded that "there was an articulable connection between the residence and the [vehicle] so as to remove the Elm Street house and its occupants from the category of innocent householders. . . ." *Id.* at 346.

Thus, *Travisano* involved an application to search a residence for evidence of crimes that had occurred just one day prior to the application for a search warrant—a fact that was relevant to the Court's analysis. *See id.* ("Considering . . . the short time [between the afternoon of August 9 and the morning of August 10], the magistrate could reasonably infer that the robbers had time to remove and secrete the items and desired to secure these items in a safe area such as a residence."). There is no information contained in the search warrant affidavit in this case that officers followed Defendant back to his residence after he engaged in drug trafficking transactions, or any facts supporting that evidence specific to the controlled purchases was secreted in Defendant's home—information that may support a reasonable inference that evidence of the crimes, such as proceeds of drug trafficking, might be found there. Rather, at least weeks had passed between the surveillance at the Pierce Avenue property and the search. In other words, the observance of a vehicle that at one point contained evidence of a crime, outside of a house shortly after the crime was committed (like the vehicle in *Travisano*), creates a different inference than law enforcement's observation of a vehicle used by Defendant to perpetrate alleged drug crimes parked next to Defendant's residence during unspecified day and evening hours. (*See* Dkt. 29 at 3 ("[Y]our deponent has observed [Defendant] coming and going from the above building and further, have observed the [2006 black Land Rover Range

- 13 -

Rover] parked at the building at 1364 PIERCE AVENUE, UPPER APARTMENT both during the day and evening hours.")).

On the other hand, it is certainly a fair inference to conclude that a drug trafficker regularly utilizing a vehicle that he does not own, kept day and night at a residence that he does control and own, would likely keep evidence of his drug trafficking at the residence. Moreover, investigators do not need to observe a defendant bringing drugs into or out of a residence to be searched to establish probable cause. *See United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) ("A showing of nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." (internal quotations and citation omitted)); *United States v. Montgomery*, No. 17-CR-6005-FPG, 2017 WL 3821262, at *9 (W.D.N.Y. Aug. 31, 2017) (finding where surveillance observed the defendant leave the premises to be searched prior to engaging in narcotics transaction, and then one day later, returned to his residence after engaging in a separate narcotics transaction, coupled with the logistical proximity of the drug deals and the agent's expert opinion, search warrant supported by probable cause).

There are gaps in the search warrant affidavit which, if provided, could assist with the Court's probable cause determination. For instance, there is no information as to how the controlled buys were arranged, when the controlled buys were arranged (in comparison to the timing of the actual sales), or the length of surveillance conducted on the Pierce Avenue residence prior to observing Defendant's exit before the November 2017 controlled buy. This Court understands why Judge McCarthy concluded that

probable cause was lacking for the search warrant. Nonetheless, this Court must be deferential to Justice Kloch's probable cause determination, and the case presents a close call. Indeed, while each party has cited case law in support of its or his respective position, as discussed herein, there is no case that the Court has reviewed that stands on all fours with the facts of this case.

Admittedly, if the Court was required to reach the probable cause determination, it may very well agree with the Report and Recommendation—but the Court does not need to reach that issue. Because even if the search warrant lacked probable cause the evidence would not be suppressed under *Leon*, this Court concludes that under a *de novo* review of Defendant's suppression motion, it does not need to resolve the probable cause determination. *See Ganias*, 824 F.3d at 209. Instead, it will proceed to addressing the *Leon* good faith exception without deciding whether probable cause existed for issuance of the search warrant.

## II.    The *Leon* Good Faith Exception Applies

Even if the warrant lacked probable cause and Defendant's Fourth Amendment rights were violated when his residence was searched, the exclusionary rule does not automatically operate to suppress the seized evidence. "Indeed, exclusion has always been our last resort, not our first impulse." *Rosa*, 626 F.3d at 64 (quoting *Herring v. United States*, 555 U.S. 135, 140 (2009)).

There are four circumstances where an exception to the exclusionary rule would not apply and evidence obtained pursuant to a warrant lacking probable cause should be excluded:

(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; [or] (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon*, 468 U.S. at 923). "These exceptions reflect the general rule that, '[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *United States v. Romain*, 678 F. App'x 23, 25 (2d Cir. 2017) (alteration in original) (quoting *Herring*, 555 U.S. at 144). "'The pertinent analysis of deterrence and culpability is objective,' and "'our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances."'" *Rosa*, 626 F.3d at 64 (quoting *Herring*, 555 U.S. at 145).

"'The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance' on an invalidated warrant." *Clark*, 638 F.3d at 100 (citations omitted). Moreover, as counseled by the Second Circuit, in assessing whether the government has met its burden, a court must consider that "in *Leon*, the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within its protection." *Id.*

Defendant argues that the good faith exception does not apply because of the first, third, and fourth *Leon* factors. (Dkt. 36 at 5-7). Because Defendant did not argue that

the first and fourth factors applied in his briefing of this issue before Judge McCarthy[1] (*see* Dkt. 21 at 29-30), the Report and Recommendation addresses only the third limitation (*see* Dkt. 33 at 6-8). For the reasons discussed below, none of the *Leon* factors apply, and therefore, even if the warrant lacked probable cause, the evidence seized from the residence will not be suppressed.

### A.  First *Leon* Factor—Issuing Judge Knowingly Misled

Defendant contends that the search warrant is "littered with reckless falsities." (Dkt. 36 at 6). Defendant points to six statements contained either in the warrant affidavit or *ex parte* statements by the affiant to Justice Kloch that he contends are false: (1) the sentence in the warrant application that Defendant "does illegally possess, store and sell quantities of cocaine at 1364 Pierce Avenue"; (2) the omission from the warrant affidavit and the *in camera* testimony that on two occasions, a substance was submitted to the lab and it did not test positive for cocaine; (3) the affiant's *in camera* statement to Justice Kloch that Defendant was the only occupant of the house; (4) the affiant's *in camera* statement that the informant had personal knowledge that the business was being renovated; (5) the affiant's *in camera* statement that all of the controlled purchases were recorded, when only one transaction was recorded; and (6) the statement in the warrant affidavit that heroin was located on the premises. (Dkt. 36 at 6-7).

---

[1]     The Government argues that at least some of Defendant's arguments are untimely. (*See, e.g.*, Dkt. 41 at 13). The Court addresses each of Defendant's arguments, including those that were not raised before Judge McCarthy, without resolving the Government's timeliness objection.

As to the statements in the affidavit that Defendant possesses, stores, and sells cocaine at 1364 Pierce Avenue and that heroin was located at the premises, these statements clearly are overlooked boilerplate language and akin to typographical errors. There is no indication that they were included in the warrant affidavit to mislead the issuing judge; for example, the warrant affidavit does not include any additional information relevant to searching for heroin, and it is abundantly clear from the warrant application that Defendant allegedly deals in cocaine—not heroin. Further, the statement that Defendant stored cocaine at his house, at least on one occasion, is supported by the November 2017 surveillance. These statements are, at best, typographical errors, and do not amount to false statements.

As to the claimed omission that on two occasions the believed controlled substance did not test positive for cocaine and the statement that all of the controlled purchases were recorded, Defendant either misstates the facts or relies on information that became known to the investigative team following the signing of the warrant application. (*See* Dkt. 41 at 8-9 (laboratory reports at issue were from controlled buys not included in the warrant application; first lab report revealed that substance tested positive for cocaine but did "not meet the laboratory standard for quantification"; and second lab report was issued on January 10, 2018, after the affiant submitted the search warrant application to Justice Kloch); *id.* at 12 (affidavit states that October and November 2017 controlled buys were recorded; affiant did not mislead Justice Kloch by asserting that he reviewed the content of the October 2017 recording; and Government only learned of inadvertently deleted October 2017 recording when providing discovery)). In other words, none of these

statements suggest bad faith on the part of the affiant, nor is there any support for the notion that exculpatory evidence was somehow withheld from Justice Kloch.

As to the affiant's *in camera* testimony that Defendant was the only occupant of 1364 Pierce Avenue, it is true that the discussion between Justice Kloch and the affiant is somewhat unclear in terms of the status of Defendant's occupancy of certain parts of the premises to be searched. (*See* Dkt. 45 at 7-8; Dkt. 41 at 10). However, it is abundantly clear from the search warrant application that a Michelle Montgomery also occupied the property. (*See* Dkt. 29 at 3 ("Your deponent did make contact with Ashley Furniture Store in Amherst, New York and confirmed that the furniture delivery was for a Michelle Montgomery. The above listed Range Rover that [Defendant] has been observed regularly operating is also registered to Michelle Montgomery. . . .")). Accordingly, Defendant has not shown that the affiant deliberately misled Justice Kloch on this point. Instead, it appears that the affiant was attempting to explain to Justice Kloch that the premises contained one residential apartment, but it also contained business space in the lower level that Defendant was renovating, and that Defendant had control over the entire structure. (Dkt. 45 at 7-8).

Defendant further contends that, contrary to what the affiant told Justice Kloch, the informant did not have personal knowledge of renovations occurring at the Pierce Avenue property, because "to have personal knowledge" the informant "would have had to have been inside the building." (Dkt. 36 at 7). Defendant has failed to show that the informant did not have personal knowledge of renovations taking place. There is nothing in the record suggesting that the informant was not inside the building, or even that one

would have needed to be inside to learn that renovations were taking place from, for instance, observing contractor traffic outside the building. In any event, this was hardly critical information necessary for issuance of the search warrant. It certainly does not defeat applicability of the *Leon* good faith exception.

It is the Government's burden to establish the good faith of its officers. *United States v. Clark*, 638 F.3d at 100. On the other hand, to even obtain a hearing on whether a law enforcement affidavit contains knowing or reckless falsehoods, a defendant must make "a 'substantial preliminary showing' that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (2008)).

The Government has offered satisfactory responses and explanations to Defendant's contention that the affiant intentionally misled Justice Kloch, *see United States v. Rickard*, 534 F. App'x 35, 38 (2d Cir. 2013) (agent's description of house as white rather than beige in the warrant application does not undermine conclusion that good faith applies, where discrepancy was explained as attributable to the white appearance of beige by nighttime light), and Defendant has fallen woefully short of showing that the affiant made false statements to Justice Kloch. In other words, none of the statements raised by Defendant amounted to falsities that somehow misled Justice Kloch at the time of the signing of the warrant application. Therefore, the first *Leon* circumstance is not applicable here.

## B. Third *Leon* Factor—Application So Lacking in Probable Cause That Reliance Unreasonable

"*Leon* instructs that officers cannot reasonably rely on a warrant issued on the basis of an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Clark*, 638 F.3d at 103 (internal quotations and citations omitted). "Such a concern most frequently arises when affidavits are bare bones, *i.e.*, totally devoid of factual circumstances to support conclusory allegations," and "is particularly acute when facts indicate that the 'bare-bones description . . . was almost calculated to mislead.'" *Id.* (alteration in original) (quoting *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996), *aff'd on reh'g*, 91 F.3d 331 (2d Cir. 1996)). However, in cases where "thoughtful and competent judges might disagree" as to whether an application establishes probable cause, "the error [is] committed by the district court in issuing the warrant, not by the officers . . . execut[ing] it," and the exclusionary rule will not apply. *Id.* at 104 (internal quotations and citations omitted); *see Falso,* 544 F.3d at 129.

In briefing on this issue before Judge McCarthy, Defendant relied heavily on *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016). (Dkt. 21 at 26). In *Brown*, law enforcement obtained a warrant to search the defendant's residence, based on the following facts: (1) a dog alerted to the odor of narcotics in a vehicle that was parked outside of a co-defendant's house and was registered to the defendant at his residence; (2) a text message was discovered on a cellular telephone believed to belong to the defendant that had text messages suggestive of drug trafficking; and (3) the defendant had a prior conviction and prior charges for drug trafficking crimes. *Id.* at 379-80. The Court found that the search

warrant for the defendant's residence lacked probable cause, and further that the *Leon* good faith exception did not apply, because the warrant was "devoid of facts connecting the residence to the alleged drug dealing activity," such as facts articulating that any suspicious activity had taken place there, that a reliable confidential informant had purchased drugs there, surveillance of the home, or surveillance indicating that the defendant had used his car to transport drugs from his home to another location. *Id.* at 382, 385. In the absence of these facts, the Court found that the "defendant's status as a drug dealer, standing alone, d[id] not give rise to a fair probability that drugs will be found in [the] defendant's home." *Id.* at 383. Here, in contrast to *Brown* and as found by Judge McCarthy, the search warrant affidavit was not entirely devoid of facts connecting Defendant's drug trafficking to his residence, and "[l]aw enforcement made at least some attempt to connect defendant's alleged drug trafficking activities to the residence. . . ." (Dkt. 33 at 7).

Defendant also relies on another Sixth Circuit case, *United States v. Laughton*, 409 F.3d 744 (6th Cir. 2005), for the proposition that a "bare-bones" affidavit lacks the requisite indicia of probable cause. (Dkt. 36 at 4). *Laughton*, however, is distinguishable. In *Laughton*, even though two controlled purchases had occurred at the premises to be searched, the warrant affidavit neglected to detail information as to where the confidential informant had made the controlled purchases, or from whom he made them. *Id.* at 746-47. Because the warrant "failed to make any connection between the residence to be searched and the facts of criminal activity that the officer set out in his affidavit" and "failed to indicate any connection between the defendant and the address given or between the

defendant and any of the criminal activity that occurred there," it was so bare-bones that officers could not have reasonably relied upon it. *Id.* at 747, 752.

The search warrant application in this case is not devoid of facts connecting the residence to drug trafficking. The affidavit explains that in November 2017, surveillance observed Defendant leave the 1364 Pierce Avenue property. (Dkt. 29 at 3). Following his departure from 1364 Pierce Avenue, Defendant proceeded directly to the scene of the controlled purchase. (*Id.*). Investigators then observed Defendant engage in a suspected narcotics transaction in his vehicle with the confidential informant. (*Id.*). Following the controlled purchase, the confidential informant confirmed that he/she had purchased cocaine from Defendant, and the suspected narcotics tested positive for cocaine. (*Id.*). These facts, in conjunction with information from the October 2017 and December 2017 controlled purchases, the fact that Defendant was living at the residence and owned it, and that the Range Rover was used for drug trafficking and stored at the residence, make the investigators' reliance on the warrant reasonable. *See Kortright*, 2011 WL 4406352, at \*9 (where defendant dealt drugs on a handful of occasions, but there was no evidence linking his apartment to drug trafficking, declining to suppress evidence where reasonably, well trained officer would not have known the search of apartment was illegal). In other words, there is some information connecting Defendant's residence to drug trafficking activity, and it was reasonable for investigators to infer that Defendant left 1364 Pierce Avenue in November 2017 with cocaine. Indeed, as evidenced by Judge McCarthy's Report and Recommendation, and Justice Kloch's probable cause determination leading to issuance of the warrant, reasonable minds can disagree as to whether probable cause supported

issuance of the warrant, but at the very least, a reasonably well trained law enforcement officer would not know, under the circumstances, that the search was illegal.

Moreover, although the *in camera* testimony may not be relied upon to evaluate the sufficiency of the warrant for probable cause because it was not referenced in the warrant, it is relevant to the determination of whether the officers acted in good faith. *See Rosa*, 626 F.3d at 64. A review of the information disclosed to Justice Kloch during that *in camera* session only further supports the conclusion that probable cause supported the warrant, and at a minimum, the search warrant application was not so lacking in probable cause to make reliance on the warrant unreasonable.

### C. Fourth *Leon* Factor—Facially Deficient Warrant

The fourth *Leon* circumstance is that the challenged warrant is so facially deficient that reliance upon it is unreasonable.[2] "In *Leon*, the Supreme Court observed that 'a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" *Clark*, 638 F.3d at 101 (quoting *Leon*, 468 U.S. at 923). In other words, the fourth *Leon* circumstance applies when the warrant omits or misstates the place to be searched, or the things to be seized. *See United States v. Sheppard*, 468 U.S. 981, 985-86, 988 n.5 (1984) (warrant facially deficient where warrant for narcotics searches

---

[2] Defendant characterizes this fourth factor as "Good faith/Objectively Reasonable" and appears to conflate this factor with the third *Leon* factor. (Dkt. 36 at 5). The fourth *Leon* factor addresses the facial sufficiency of the warrant itself, not whether it was reasonable to believe that probable cause supported the warrant. *See Clark*, 638 F.3d at 103.

was used to authorize search for evidence of a murder); *United States v. George*, 975 F.2d 72, 78 (2d Cir. 1992) (officers could not reasonably rely on warrant to seize evidence of criminality not limited to the type of evidence or to a particular crime).

The warrant at issue does not contain a facial deficiency. It specifically identifies the places to be searched:

> the premises located at 1364 PIERCE AVENUE, UPPER APARTMENT, CITY OF NIAGARA FALLS, COUNTY OF NIAGARA, STATE OF NEW YORK including any rooms, closets, storage areas, safes, attic and basement to include the inactive business downstairs and a vehicle being a 2006 BLACK LAND ROVER RANGE ROVER bearing New York State registration HPS1619 and VIN # SALMF13456A231105 including all hidden compartments, trunk and undercarriage. . . .

(Dkt. 29 at 1). Similarly, the warrant specifically identifies the items to be seized: "Cocaine in violation of Section 220 of the Revised Penal Law of the State of New York."[3] (*Id.*).

Defendant does not identify any such defect in the warrant. Rather, Defendant's sole argument is that the officer who applied for the search warrant is the same officer

---

[3]     Although the search warrant affidavit requested a warrant to search for "cocaine . . . and any documents, money, cell phones, written articles, papers, and ledgers that tend to show the possession, storage and sale of cocaine," (Dkt. 29 at 4), the warrant itself appears to have been limited to cocaine (*id.* at 1). Nonetheless, Defendant has not argued that the items seized exceeded the scope of the warrant, which is a different argument than whether the warrant lacked probable cause and whether the *Leon* good faith exception applies. It is up to Defendant to meet his initial burden to articulate a basis for suppression and present a *prima facie* case for exclusion of evidence. *See, e.g., United States v. Bayless*, 921 F. Supp. 211, 213 (S.D.N.Y. 1996). Since Defendant has not raised this issue, and since the record is not sufficiently developed as to each of the items seized and whether they were seized pursuant to the warrant or on some other basis, such as evidence in plain view, the Court specifically does not address whether evidence was seized outside the scope of the warrant.

who searched the premises, and that it is therefore impossible for him to have been objectively reasonable. (Dkt. 36 at 5). This argument misconstrues the concern addressed by the fourth *Leon* factor, which is not concerned with whether probable cause supported the search warrant but rather whether there is a facial defect in the warrant itself that should have led a reasonably well trained officer to know that the search was illegal. *See Clark*, 638 F.3d at 103 ("To be sure, the Constitution further requires that warrants be issued only 'upon probable cause,' but it does not require that probable cause be stated in the warrant itself. Thus, to the extent probable cause was lacking to support a warrant to search the whole of the premises particularly described, the defect lies not in the warrant but in the warrant affidavit." (citations omitted)).

Moreover, contrary to Defendant's argument, the *Leon* good faith exception to the exclusionary rule is regularly applied to instances where the warrant is lacking in probable cause, but the affiant who submitted the search warrant affidavit and executed a defective search warrant relied upon the warrant in good faith. *See, e.g., United States v. Raymonda*, 780 F.3d 105, 110-11, 119-20 (2d Cir. 2015) (good faith exception applied to evidence seized pursuant to warrant issued based upon stale information, where agent who applied for warrant executed search warrant); *Rosa*, 626 F.3d at 66 (where warrant failed for lack of particularity, *Leon* good faith exception applied to evidence seized pursuant to search executed by a team led by the search warrant application's affiant).

## CONCLUSION

For the foregoing reasons, the Court adopts, in part, Judge McCarthy's Report and Recommendation (Dkt. 33), concluding that the *Leon* good faith exception applies without reaching the issue of whether probable cause supported issuance of the search warrant, and therefore, Defendant's motion to suppress evidence obtained from the search of 1364 Pierce Avenue (Dkt. 21) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: November 21, 2018
Rochester, New York